UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

AVINDERJIT BINDRA, an individual who lacks legal capacity to make decisions, through his court-appointed Guardian ad litem, PAVELJIT BINDRA,

Plaintiff,

v.

BANK OF AMERICA, N.A., a Delaware corporation, et al.,

Defendants.

Case No. 2:26-cv-04723-HDV-DSR

**ORDER RE PLAINTIFF'S MOTION TO REMAND [8] AND DEFENDANTS' MOTION TO DISMISS COMPLAINT [6]**

## I. INTRODUCTION

Plaintiff Avinderjit Bindra is an 85-year-old retiree who lost over $2.5 million because of three separate financial scams. Through his guardian ad litem (and son) Paveljit Bindra, he now asserts financial elder abuse and unfair competition claims against Bank of America, N.A. ("BofA") and its bank officer, Natalie Garcia (collectively, "Defendants") for their role in failing to flag or prevent the extensive fraud.

Before the Court are two motions: (1) Plaintiff's Motion to Remand, and (2) Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff contends in his motion that the Court lacks subject matter jurisdiction under the Edge Act, 12 U.S.C. § 632, because the fraudulent conduct had little to no relationship to international banking. Defendants' motion is predicated on the theory that the Complaint fails to sufficiently allege the knowledge requirement necessary to maintain a claim under California's Elder Abuse Act.

For the reasons discussed below, both Motions are denied. The Court concludes that the five wire transfers made from Plaintiff's accounts to a Hong Kong bank are more than sufficient to support jurisdiction under the Edge Act. And the detailed allegations in the Complaint outlining the two-year campaign of fraud is amply sufficient to allege the pleading requirements under California's elder abuse and UCL statutes.

## II. BACKGROUND

Plaintiff Avinderjit Bindra is an 85-year-old retired colonel in the Indian Army and former employee in the Los Angeles County school system who was subjected to repeated financial exploitations following the 2022 death of his wife of 53 years.[1] Complaint ¶¶ 1, 31, 39–42 [Dkt. 1-1]. Plaintiff alleges that from October 2023 to July 2025 he was the victim of three separate scams that fraudulently induced him to transfer approximately $2.5 million from his BofA accounts, representing more than half of his life savings and net worth. *Id.* ¶¶ 1, 9, 43.

---

[1] The Court draws the facts from the Plaintiff's Complaint, and accepts all of the plausible allegations as true, as it must at the motion to dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The first scam ("Feux Scam") ran from October to December 2023 and involved eight transfers, consisting of seven in-person wire transfers from his personal account and a wire from his business account. *Id.* ¶¶ 44–47, 49, 59. The second scam came later in January 2025 and involved two payments to a fraudulent crypto entity ("ZKE Scam"). *Id.* ¶¶ 60–61. The third scam ("Dashiell's Club Scam") occurred from June to July 2025 and consisted of six business-account wire transfers totaling approximately $1 million. *Id.* ¶¶ 66–67. The first and third scams involved transfers from Plaintiff's BofA accounts to the scammers' accounts, while the second scam involved transfers only from Plaintiff's BofA account to his own account held with Coinbase, not a party in this litigation. *Id.* ¶¶ 46, 49, 61, 66.

Following the revelation of the initial fraud, Bindra and his daughter, Natasha, implemented safeguards to Plaintiff's account to prevent further loss. *Id.* ¶¶ 7, 53. Plaintiff's daughter travelled from New York to California to have herself added as a joint account owner at Plaintiff's local BofA branch in Upland, California. *Id.* ¶ 53. During that intervention in 2023, Defendant's agents also helped enable notifications for Plaintiff's daughter so that she would be notified of any irregular transactions in the future. *Id.*

Despite these efforts, Plaintiff alleges Defendant BofA failed to notify his children of the subsequent instances of fraudulent transfers. *Id.* ¶¶ 53–56. Plaintiff alleges Defendant BofA and its agents and representatives across two branches allowed at least fourteen wire transfers totaling $2.5 million to proceed without performing any risk assessments. *Id.* ¶¶ 21–22. Managers purportedly signed off on all fourteen wires, failed to delay the transactions, and never notified Plaintiff's daughter. *Id.* ¶¶ 23–25. Plaintiff alleges that in violating their own internal policies and statutory obligations, Defendants knew their actions were assisting the elder financial abuse that siphoned more than half of Bindra's life savings. *Id.* ¶¶ 27, 83–84.

## III. LEGAL STANDARD

Generally, a civil action filed in state court may properly be removed if there is federal subject matter jurisdiction at the time of removal. *See* 28 U.S.C. §§ 1441 (removal), 1331 (federal question jurisdiction), 1332 (diversity jurisdiction). The removing party bears the burden of establishing the existence of the court's federal subject matter jurisdiction. *Prize Frize, Inc. v.*

*Matrix, Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999). The notice of removal need only include a "short and plain statement," or "plausible allegation," of "the grounds for removal." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87–89 (2014) (quoting 28 U.S.C. § 1446(a)). Where the plaintiff challenges the removing defendant's allegations, however, "both sides submit proof and the court decides, by a preponderance of the evidence," whether the jurisdictional requirements have been satisfied. *Id*. at 82.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). A properly pled complaint "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. And only where a plaintiff fails to "nudge[] [their] claims . . . across the line from conceivable to plausible" is the complaint properly dismissed. *Iqbal*, 556 U.S. at 680.

## IV. DISCUSSION

### A. Edge Act Removal

Defendants removed this action from the Superior Court of Los Angeles claiming that this Court has federal question jurisdiction under the Edge Act, 12 U.S.C. § 632, and diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). *See* Notice of Removal ¶¶ 5, 11, 13 [Dkt. 1].

Federal courts have a "strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). The Edge Act provides:

> Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking, . . . shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits; and any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State

> court into the district court of the United States for the proper district by following the procedure for the removal of causes otherwise provided by law.

12 U.S.C. § 632. In interpreting Congress's jurisdictional grant under the Edge Act, courts have recognized three requirements for removal: "(1) a civil action, (2) in which a 'corporation organized under the laws of the United States' is a party, and which (3) 'aris[es] out of transactions involving international or foreign banking.'" *Lin v. JPMorgan Chase Bank N.A.*, No. 2:24-CV-01837-JLS-E, 2024 WL 2272387, at *1 (C.D. Cal. May 19, 2024) (first citing *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 780 (2d Cir. 2013); and then citing *Gray v. Ben*, No. CV 22-03090 DSF (PVCx), 2022 WL 3928375, at *2 (C.D. Cal. Aug. 31, 2022)). All three elements are met here.

This civil action was initiated by Plaintiff Bindra on January 9, 2026, in the Los Angeles Superior Court alleging violations of California state laws. Complaint at ¶¶ 79–81, 90–92. Defendant Bank of America is a corporation organized under the laws of the United States as it is incorporated in Delaware and headquartered in Charlotte, North Carolina. *Id.* ¶ 34; Notice of Removal ¶¶ 9, 12. The allegations in the Complaint therefore satisfy the first two elements for jurisdiction under 12 U.S.C. § 632, and Plaintiff does not contest this conclusion. *See* Motion to Remand ("Remand Motion") at 7 [Dkt. 8]; *see also Gilbert v. Bank of Am., N.A.*, No. CV-13-01171-JSW, 2013 WL 12483550, at *2 (N.D. Cal. Aug. 30, 2013).

Plaintiff's Remand Motion instead challenges the applicability of the third element. Plaintiff argues that because his financial injuries stem principally from Defendants' failure to monitor or prevent the fraud that occurred in Plaintiff's local accounts, "[a]ny potential connection to international banking is too tenuous." Remand Motion at 9. More specifically, Plaintiff contends that "[t]he propriety of any business dealings with foreign countries are completely irrelevant" and that the Complaint "does not even state the geographic destination of any of the wire transfers." *Id.* at 9–10.

But the Complaint ***does*** identify foreign banking transactions involved in the relevant conduct. Indeed, the Complaint alleges a series of large, international wire transfers from Plaintiff's personal BofA account to a Hong Kong bank involved in the first "Feux" scam, including:

- October 12, 2023: $248,000 to Chong Hing Bank;
- October 17, 2023: $499,000 to Chong Hing Bank;
- October 17, 2023: $400,000 to Chong Hing Bank; and
- November 9, 2023: $243,000 to Chong Hing Bank.

*See* Complaint ¶¶ 44, 46. In addition, the Complaint alleges that a separate $100,000 wire transfer was made on October 24, 2023, to this same Hong Kong bank, this time from Plaintiff's business account. *Id.* ¶ 49. Nor can it be said that these transfers were somehow *de miminis* or "incidental" to the fraud. To the contrary, these five transactions represent $1,490,000 in losses—and well over half of Plaintiff's alleged total.

It is certainly true that courts have differed in their analysis of how much of a connection the offending conduct must have to the international transactions to satisfy the third, "arising out of" requirement. *See, e.g., Gray*, 2022 WL 3928375, at *3 ("Courts are split on whether the [Edge] Act should be interpreted as providing a broad basis for federal jurisdiction or read more narrowly."); *Ritchie Cap. Mgmt., L.L.C. v. JP Morgan Chase & Co.*, 960 F.3d 1037, 1047 (8th Cir. 2020) ("Courts continue to debate how broadly the Edge Act's grant of federal jurisdiction sweeps."). And the Ninth Circuit has yet to address this issue squarely.[2]

But this Court ultimately finds most persuasive those sister court decisions in this circuit that have found the requirement satisfied—including in analogous cases involving elder abuse—where the fraud included international wire transfers much like those present here. *See, e.g.*, *Smith v. JPMorgan Chase Bank, N.A.*, No. 24-CV-1287 JLS (DTF), 2025 WL 1554370, at *3 (S.D. Cal. June 2, 2025) (finding Edge Act jurisdiction in elder abuse case where "Amazon" scam caused a $37,000 wire transfer to be sent from a Chase Bank account to a Hong Kong bank); *Lin*, 2024 WL 2272387,

---

[2] Of some relevance is the Ninth Circuit's analysis of the second paragraph of 12 U.S.C. § 632, where the court pointed out that the Edge Act "provides a broad grant of jurisdiction." *City & Cnty. of San Francisco v. Assessment Appeals Bd. for City & Cnty. of San Francisco, No. 1*, 122 F.3d 1274, 1276 (9th Cir. 1997). The court further explained that Congress intended "that a federal reserve bank . . . have unrestricted access to the district courts" because Section 632 "is written in the broadest possible language." *Id.* (citing *Federal Reserve Bank of Boston v. Commissioner*, 499 F.2d 60, 63 (1st Cir. 1974)).

at *2–*4 (finding Edge Act jurisdiction in action involving financial elder abuse where transaction involved an international wire transfer); *Gray*, 2022 WL 3928375, at *2–*4 (processing of plaintiff's international wire transfer fell within the purview of the Edge Act); *Bortz v. JPMorgan Chase Bank*, N.A., No. 21-CV-618 TWR (JLB), 2021 WL 4819575, at *2 n.2 (S.D. Cal. Oct. 15, 2021) (upholding Edge Act removal in financial elder abuse claim associated with international wire transfers). Remand is denied.

**B. Motion to Dismiss**

**1. California's Elder Abuse Law.**

Plaintiff's first cause of action alleges violations of the Elder Abuse and Dependent Adult Civil Protection Act, Cal. Welf. & Inst. Code § 15600 ("Elder Abuse Law"). Complaint ¶¶ 79–89. California's Elder Abuse Law provides as follows:

> (a) "Financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following:
>
> > (1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.
> >
> > (2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both....
>
> (b) A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult.

Cal. Welf. & Inst. Code § 15610.30(a)(1)–(2), (b).

The singular dispute between the parties on the first cause of action is the sufficiency of the Complaint's allegations regarding Defendants' "actual knowledge" of the scams targeting Plaintiff. *See* Motion to Dismiss at 1, 4–8 [Dkt. 6]; Opposition to Motion to Dismiss at 1–2, 7–13 [Dkt. 12]. The Parties seemingly agree that the decision in *Das v. Bank of America*, 186 Cal. App. 4th 727 (2010), controls this knowledge requirement. *See* Motion to Dismiss at 4–5; Opposition to Motion to Dismiss at 7–8. The *Das* court held that "when, as here, a bank provides ordinary services that effectuate financial abuse by a third party, the bank may be found to have 'assisted' the financial abuse only if it knew of the third party's wrongful conduct." *Id.* at 745. In other words, a court

evaluating the sufficiency of an action under California's Elder Abuse Law "must scrutinize whether the plaintiff has alleged the bank had actual knowledge of the underlying wrong it purportedly aided and abetted." *Id.* (citing *Casey v. U.S. Bank, N.A.*, 127 Cal. App. 4th 1138, 1152 (2005)). This actual knowledge requirement has been recognized by several courts in this Circuit, including in unpublished, non-precedential dispositions from the Ninth Circuit. *See, e.g.*, *Gray v. JPMorgan Chase Bank, N.A.*, 2024 WL 1342619, at *1 (9th Cir. Mar. 29, 2024) (applying actual knowledge requirement pursuant to *Das*); *Bortz v. JP Morgan Chase Bank, N.A.*, 2023 WL 4700640, at *2 (9th Cir. July 24, 2023) (same); *Kanter-Doud v. Wells Fargo Bank, N.A.*, 2024 WL 382325, at *6 (E.D. Cal. Feb. 1, 2024) (same); *Ma v. Bank of Am.*, 2023 WL 9644851, at *3 (C.D. Cal. Dec. 20, 2023) (same).

Applying this standard, the Court concludes that Plaintiff has met his burden of plausibly alleging Defendants' actual knowledge of the scams. *See, e.g.*, Complaint ¶¶ 4, 15, 21, 23, 84–85. The Court finds Judge Staton's discussion in *Lin* instructive in evaluating the sufficiency of Plaintiff's allegations on this point. 2024 WL 5182199, at *5–*6. Because *Das* and the subsequent non-binding federal decisions lack a substantive discussion of the actual knowledge requirement, *Lin* looked at other civil-liability contexts under California law to determine how California courts assess actual knowledge.[3] *Id.* at *6. In other contexts, "California courts apply the *Uccello* standard for assessing whether a plaintiff has made a showing of actual knowledge," and that standard provides:

> [T]hat a defendant's actual knowledge may be shown, not only by direct evidence, but also by circumstantial evidence. Hence, [a defendant's] denial of such knowledge will not, per se, prevent liability. However, actual knowledge can be inferred from the circumstances only if, in the light of the evidence, such inference is not based on speculation or conjecture. *Only where the circumstances are such that the defendant 'must have known' and not 'should have known' will an inference of actual knowledge be permitted.*

---

[3] Neither the Parties briefs nor the Court's own research has revealed any further elucidation from California's courts as to what substantively suffices as "actual knowledge" under the Elder Abuse Law. As such, *Lin*'s consultation of other civil-liability contexts to ascertain the meaning of "actual knowledge" continues to apply.

*Id.*; *Uccello v. Laudenslayer*, 44 Cal. App. 3d 504, 514 n.4 (1975) (internal citations omitted) (emphasis added). The *Uccello* standard has been applied across different contexts in California case law, making it relevant to the application of the actual knowledge required under *Das* in the context of the Elder Abuse Law. *See Lin*, 2024 WL 5182199, at *6 (collecting cases); *see also RSB Vineyards, LLC v. Orsi*, 15 Cal. App. 5th 1089, 1098 (2017) (explaining a real estate agent's actual knowledge "can be inferred from the circumstances only if, in the light of the evidence, such inference is not based on speculation or conjecture") (citing *Yuzon v. Collins*, 116 Cal. App. 4th 149, 163 (2004)). *Das* itself supports the notion of circumstantial evidence sufficing to show actual knowledge, because *Das* relies on a decision that looked at circumstantial evidence to find actual knowledge. *Lin*, 2024 WL 5182199, at *7. As Judge Staton writes: "*Das*—through its discussion of *Wood*—seemingly contemplated that actual knowledge could be shown through circumstantial evidence that a party must have known he or she was assisting in elder abuse." *Id.* (discussing *Wood v. Jamison*, 167 Cal. App. 4th 156, 158–59, 164 (2008)).

So too here. After banking with Defendant BofA for decades, Plaintiff alleges he fell victim to ***three*** separate financial scams. Complaint ¶¶ 1, 44–69. The Complaint lays out in painstaking detail the more than a dozen transactions (over a considerable period of two years) that were not flagged despite Plaintiff's specific efforts to bring these to BofA's attention and to impose guardrails for future fraud. *Id.* Plaintiff alleges that the rapid succession of these high-value transfers exhibited signs of financial elder abuse that also show Defendants' purported complicity. *Id.* ¶¶ 51, 71, 73. Notably, on a single day, July 14, 2025, Plaintiff allegedly made two transfers to the third scammers' Wells Fargo account: one for $240,100 and the second for $54,650. *Id.* ¶ 66.

In further support of his allegation, Plaintiff points to the "Interagency Guidance on Privacy Laws and Reporting Financial Abuse of Older Adults" ("Interagency Guidance"), which the Federal Reserve, Consumer Financial Protection Bureau, and six other federal agencies issued to financial institutions a decade ago. *Id.* ¶ 70. That guidance identifies two hallmarks of elder financial abuse to be "[s]udden non-sufficient fund activity" and "[u]ncharacteristic attempts to wire large sums of money"—the Interagency Guidance states "[a] financial instution's familiarity with older adults it encounters may enable it to spot irregular transactions, account activity, or behavior." *Id.* ¶¶ 70–72.

Plaintiff also alleges that his numerous transactions exceeding the U.S. Department of Treasury's $10,000 threshold requiring the filing of a "Currency Transaction Report" further supports his contention that Defendant BofA knew of the ongoing scams. *Id.* ¶ 74.

In short, the Court concludes that Plaintiff has plausibly alleged Defendants "'must have known' that financial elder abuse was occurring, not just that [Defendants] 'should have known.'" *Lin*, 2024 WL 5182199, at *8 (citing *Uccello*, 44 Cal. App. 3d at 514 n.4); *cf. Kanter-Doud v. Wells Fargo Bank, N.A.*, No. 2:23-CV-00678-DAD-AC, 2024 WL 382325, at *6 (E.D. Cal. Feb. 1, 2024) (dismissing claim where plaintiff "ha[d] not alleged that she told defendant's agents about the conduct of the third party scam artists before the wire transfers were processed, nor [did] plaintiff allege that defendant otherwise had actual knowledge that she was being scammed at the time the wire transfers were processed."). The claim survives.[4]

**2. Unfair Competition Claim**

"The UCL is a broad remedial statute that permits an individual to challenge wrongful business conduct 'in whatever context such activity might occur.'" *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 181 (1999)). To state a claim pursuant to the UCL, a plaintiff must show (1) "unlawful, unfair, or fraudulent business act or practice" or (2) "unfair, deceptive, untrue or misleading advertising." *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003), *as amended* (Sept. 22, 2003) (citing Cal. Bus. & Prof. Code § 17200). And because "section

---

[4] Defendants similarly contend Plaintiff has failed to allege Defendant Garcia "had actual knowledge that [Plaintiff] was being scammed." Reply ISO Motion to Dismiss at 1–3 [Dkt. 15]. Defendant contends only two paragraphs of the Complaint allege anything about Defendant Garcia's actions or knowledge. *Id.* at 2. The Court reads the Complaint differently and finds that Plaintiff has sufficiently alleged Defendant Garcia—like Defendant BofA discussed above—must have known that Plaintiff was being scammed. The Complaint alleges, *inter alia*, that Defendant Garcia facilitated the transfers to the scammers by advising Plaintiff to create a business account during the Feux Scam, authorizing the large transactions without performing sufficient risk assessments, and failing to notify the trusted contact and joint account holder on Plaintiff's BofA account. *See* Complaint ¶¶ 14, 21–22, 24, 48. The Complaint alleges Plaintiff met with both Defendant Garcia and BofA's other agents "numerous times" and that these bank employees failed to stop the fraudulent transactions. *Id.* ¶ 24. That is more than sufficient at this pleading stage.

17200 is written in the disjunctive, it establishes three varieties of unfair competition-acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 180. "By proscribing any unlawful business practice, [the UCL] borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Id.* (citing *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1103, (1996)) (internal quotations omitted).

The Complaint pursues all three prongs of the UCL's business-practices provision, and the Motion to Dismiss avers that all three are insufficiently pled.[5] Complaint ¶¶ 90–91, 97–98; Motion to Dismiss at 8–9. In his Opposition, Plaintiff argues only that Defendants' actions violate the "unlawful" and "unfair" prongs of the UCL, seemingly dropping his contention that Defendants' actions were "fraudulent." Opposition to Motion to Dismiss at 13–14.

To state a plausible claim under the UCL's "unlawful" prong, a plaintiff must allege sufficient facts that a defendant's business practice "violates the law—meaning any civil or criminal, federal, state or municipal, statutory, regulatory, or court-made law." *California v. McKale*, 25 Cal. 3d 626, 632 (1979). As discussed above, the Complaint plausibly invokes California's Elder Abuse Law and asserts that Defendants assisted the scammers who stole nearly $2.5 million from Plaintiff from October 2023 to July 2025. *See supra*; Complaint ¶¶ 3–4, 90–93 ("Among other things, Defendants' agents . . . failed to protect Plaintiff . . . by failing to follow [Defendant BofA's] own fraud monitoring, prevention and protection policies and transferring hundreds of thousands of dollars of Plaintiff's funds via wire transfers."). That is sufficient.[6]

---

[5] Neither Plaintiff's allegations nor his arguments in the Opposition allege Defendants engaged in deceptive advertising—the other type of UCL claim. *See generally* Complaint; Opposition to Motion to Dismiss at 13–14. The Court therefore only analyzes Plaintiff's allegations under the theory that Defendants' actions constitute "unlawful" or "unfair" business practices.

[6] Defendants are correct that the reporting requirements established by California's Elder Abuse Law cannot serve as a predicate for a UCL claim as the remedies for reporting violations are exclusively governed by Section 15630.1(g). *See* Motion to Dismiss at 8–9. Lawsuits based on violations of the reporting requirements in Section 15630.1 may be initiated only "by the Attorney General, district attorney, or county counsel" and 15630.1(g)(2) expressly provides that nothing in the statute "shall be construed to limit, expand, or otherwise modify any civil liability or remedy that may exist under

A plaintiff alleging "unfair" business practices must generally satisfy three elements: "'(1) The consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided.'" *Nationwide Biweekly Admin., Inc. v. Superior Ct.*, 9 Cal. 5th 279, 303 n.10 (2020) (citing *Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006)).[7] The first element is clearly met as Plaintiff allegedly lost $2.5 million which amounted to "more than half of his life savings." Complaint ¶¶ 1, 43; *see Camacho*, 142 Cal. App. 4th at 1406 (defining "injury" as "a violation of another's rights for which the law allows an action to recover damages"). Second, Plaintiff's substantial, multi-million-dollar injury cannot possibly be outweighed by any countervailing benefits to consumers. Indeed, the Court cannot find any conceivable benefit to consumers or competition from Defendants' alleged practices. And as to whether Plaintiff (or any other reasonable consumer) could have avoided the harm, that is a question of fact for another day. The allegations are sufficient.

//

//

//

---

this or any other law." Cal. Welf. & Inst. Code § 15630.1(g)(1)–(2); *Das*, 186 Cal. App. 4th at 737–40 (holding Section 15630.1 to forbid use of reporting violation as a predicate for a negligence per se claim); *see also California v. Altus Fin., S.A.*, 36 Cal. 4th 1284, 1303 (2005) ("[T]he fact that there are alternative remedies under a specific statute does not preclude a UCL remedy, *unless the statute itself provides that the remedy is to be exclusive.*") (emphasis added).

[7] The California Supreme Court has not established a definitive test for the "unfair" prong of the UCL. *See Nationwide Biweekly Admin., Inc.*, 9 Cal. 5th at 303 ("[A] split of authority has developed in the [state's] Courts of Appeal with regard to the proper test for determining whether a business practice is unfair under the UCL in consumer cases, with appellate decisions adopting three different tests for determining unfairness in the consumer context."). The parties' briefs do not acknowledge this split, nor do they advocate for one of the tests endorsed by California's courts. *See generally* Motion to Dismiss at 8–9; Opposition to Motion to Dismiss at 13–14; Reply ISO Motion to Dismiss at 6–8. The Court adopts Judge Staton's reasoning in *Lin* in choosing to apply the three-step, FTC Act-based test from *Camacho* to Plaintiff's allegations here. *See Lin*, 2024 WL 2272387, at *10–*11 (discussing the appropriateness of *Camacho*'s test given the California Supreme Court's continued recognition of it as demonstrated in *Nationwide Biweekly Admin., Inc.*, 9 Cal. 5th at 303 n.10, and *Zhang v. Superior Ct.*, 57 Cal. 4th 364, 380 n.9 (2013)).

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is denied. Defendants' Motion to Dismiss is also denied.

Dated: September 14, 2026

Hernán D. Vera
United States District Judge